MARQUESE *v.* FELSENTHAL.

Opinion delivered December 16, 1893.

1. *When mortgage in form not construed an assignment.*

  A conveyance by a merchant of her entire stock of goods to a trustee, upon its face a mortgage, is not converted into an assignment for the benefit of creditors by the fact that the debt secured was payable on demand, that the grantor was unable to continue business, and that the trustee was authorized to take immediate possession.

2. *Fraud—Promise to secure creditor.*

  The fact that a mortgage was executed in fulfillment of a previous oral agreement that the mortgagor would give the mort-

gagee security whenever requested does not, of itself, constitute a fraud, but is a fact proper to be considered on an issue of fraud.

Appeal from Ouachita Circuit Court in chancery.

CHARLES W. SMITH, Judge.

*Morris M. Cohn* for appellant.

1. The mortgage is fraudulent and void. There was a secret agreement to secure and prefer the Camden Bank, thus allowing the debtor to make a show of assets and obtain a false credit. It was virtually taking a mortgage and withholding it from record. Secret understandings have the effect of secret liens, and are condemned when they injure parties who have no knowledge of them. 2 Verm. 261; 2 Johns. Ch. 35; 7 B. Mon. (Ky.) 374; 6 Paige, 526; 105 U. S. 100, 118; 73 Wis. 654; 41 N. W. Rep. 436; 67 Wis. 101; 30 N. W. Rep. 298; 69 Wis. 138; 123 Ill. 381; 15 Neb. 320; 7 N. W. Rep. 873; 21 Ohio St. 547; Wait, Fr. Conv. secs. 235, 236, 237; 12 Fed. Rep. 861-2; 28 *id.* 788.

2. The instrument was an assignment, and void under our statute. 31 Ark. 429, 437; 52 Ark. 30; *Ib.* 48; 53 *id.* 101; 54 *id.* 6; *Ib.* 428; 53 *id.* 537, 544; 1 McCrary, 176. Such a provision, which contemplates a continuance of business, an indefinite delay in winding up the trust, clearly makes the instrument fraudulent as to other creditors. 7 Md. 380; 11 *id.* 73. Add to this the fact that the trust was closed up by the debtor's relatives and clerks, who had ample opportunity to appropriate proceeds, and a case is clearly shown of fraud as to creditors. Wait, Fr. Conv. sec. 241.

*Bunn & Gaughan* for appellees.

1. The promise by a debtor to secure one of his creditors when he may demand it does not invalidate an instrument afterwards made to secure the debt. 17 Fed. Rep. 705; 123 U. S. 440.

2. The deed of trust did not constitute an assignment. 53 Ark. 101; 54 *id.* 234; 57 Ark. 222.

McCAIN, Special Judge. Eva Felsenthal, an embarrassed merchant, mortgaged her stock of goods to a trustee to secure a debt owing by her to the Camden National Bank. Her other creditors, who are the appellants herein, attack this mortgage.

1. Appellants contend that the mortgage is really an assignment, and void for want of compliance with the assignment law. The general distinction between a mortgage and an assignment is well understood. The one is intended to secure, the other to satisfy, a debt. A mortgage contemplates a personal effort to pay the debt, or at least reserves the right, by doing so, to restore the mortgagor's title. An assignment on the other hand denotes the Appomattox of the grantor's business career, and implies a surrender of his property to his creditors without the hope of redeeming it.

The form of the two instruments is quite similar, and, where the conveyance is unskillfully drawn, it is sometimes difficult to determine to which one of the two classes it belongs. If, therefore, the instrument on its face is ambiguous, it may be read in the light of surrounding circumstances, to see whether it be really a mortgage or an assignment. It is the privilege of an insolvent person, however, to make either a mortgage or an assignment, as he may think proper; and if, upon its face, a given instrument is clearly a mortgage, the court has no right to convert it into an assignment. The fact that a merchant has become hopelessly insolvent suggests the appropriateness of an assignment, rather than a mortgage; but the law permits him to make either, and he may have reasons satisfactory to himself for making the one rather than the other. Taking the deed of trust in this case by its four corners, it is a mortgage pure and simple. True, the debt was payable on demand, the

*1. When mortgage not construed an assignment.*

grantor was unable to continue business, and the trustee was authorized to take immediate possession; but these facts do not of themselves convert a mortgage into an assignment.    This case is quite similar to that of *Robson* v. *Tomlinson*, 54 Ark. 229, in which Chief Justice Cockrill said : "Neither the possession of the goods, nor the unreasonableness of the debtor's expectation of paying the debt at maturity, nor his intent never to pay, is the criterion for distinguishing a mortgage from an assignment.    The controlling guide, according to the previous decisions of this court, is, was it the intention of the parties, at the time the instrument was executed, to divest the debtor of the title, and so make an appropriation of the property to raise a fund to pay debts ?    If the equity of redemption remains in the debtor, his title is not divested, and an absolute appropriation of the property is not made."

In *Penzel Company* v. *Jett*, 54 Ark. 428, this court held : "To ascertain whether the parties intended the instrument as a security for debts, or as an absolute appropriation of the property described to raise a fund to pay debts, all its provisions must be read together.    If, when viewed as a whole, the intent of the parties is found to be the former, the instrument must be declared a mortgage ; if the latter, an assignment."    To the same effect the law is laid down by Judge Sandels in *State* v. *Dupuy*, 52 Ark. 48, and in *Fecheimer* v. *Robertson*, 53 Ark. 101.    If there are some expressions in *Richmond* v. *Mississippi Mills*, 52 Ark. 30, and in *Goodbar* v. *Box*, 54 Ark. 6, seemingly in conflict with the other cases cited, they may be reconciled by the consideration that either a mortgage or an assignment is rendered void if the parties to it are guilty of an actual fraudulent intent in making it.    Fraud vitiates everything, and the court never hesitates to disregard the language of an instrument if it can be shown, by evi-

dence *dehors*, that it was made with the actual intent
to defraud creditors.   As was well said in *Richmond* v.
*Mississippi Mills*, *supra:*   " The law will not be blind-
ed by form or manner."   If however, a person acting in
good faith makes a mortgage, there would seem to be
no occasion for the court to construe it to be an assign-
ment merely for the purpose of setting it aside, notwith-
standing the court might think it more appropriate for
the mortgagor, under the circumstances, to make an as-
signment.

2.   Appellants insist that the mortgage is fraudu-
lent, and therefore void, because it was made in fulfill-
ment of a previous oral promise.   Such a promise, it is
urged, constitutes a secret lien, and is of itself a fraud
upon other creditors.   This question is discussed *pro*
and *con* in *Smith* v. *Craft*, reported in 12 Fed. Rep. 861,
and in 17 *id.* 705 ; but the case was afterwards taken to
the Supreme Court of the United States, and that court
held that such an agreement was not of itself a fraud,
but that it was a fact proper to be admitted and consid-
ered in evidence on an issue of fraud.   *Smith* v. *Craft*,
123 U. S. 436.

If there were other circumstances in a given case
tending to show a conspiracy between the creditor and
the debtor to defraud other creditors, or that the pur-
pose of the favored creditor had been to enable the
debtor to make a show of assets, and thereby to obtain
credit in such case, a standing secret agreement for a
preference should be accorded much weight on an alle-
gation of fraud.   It is not sufficiently shown, however,
by the evidence in this case that the bank officials acted
with such evil design.   The promise to secure, com-
plained of by appellants, is quite general.   It was only
an understanding, to quote the language of the cashier,
"that they were to give me security at any time when I
should ask it."   This promise is little more, perhaps,

2. When
agreement to
give security
not fraud-
ulent.

than any honorable debtor holds himself ready at all times to make to an indulgent creditor. The promise was not a specific agreement to mortgage the stock of goods now in controversy. In appropriating the entire stock of goods to the satisfaction of this one debt to the exclusion of other claims, the bank and its debtor do not present themselves in an amiable light to a court which has for one of its maxims that equality is equity, but we cannot ignore the law which allows preferences to be made. One principal objection which has prevailed against abolishing preferences is, as we understand, that it would prevent the fulfillment of meritorious promises to prefer. While our suspicion of fraud is excited by the conduct of the bank, still the burden of proof is upon the appellants, and, in our opinion, they have failed to sustain the allegations in this particular.

There are one or two other points discussed in the briefs of counsel, but we deem it unnecessary to pass upon these.

Let the decree of the chancellor be affirmed.