W. R. BYRD ET AL. V. PERRY & MAXWELL.

No. 829.

1. **Mortgage—Construction of Conveyance.**—An instrument reciting that it is intended as a mortgage to secure certain debts, reserving to the grantor whatever surplus may remain after the debts are paid, and not conveying all the property of the grantor, is a deed of trust in nature of a mortgage, and not an assignment for benefit of creditors.

2. **Acts of Grantor After Delivery of Trust Deed.**—That the maker disposed of articles of merchandise after the trust deed had been delivered, without the knowledge of the trustees, and it not appearing that the said maker knew the exact hour the deed was delivered, does not prove that it was intended that the grantors should remain in possession, nor invalidate said mortgage.

3. **Creditors of an Insolvent Debtor May Take a Mortgage as Security.**—A creditor acting in good faith, and especially when the property is of less value than the secured debt, may protect himself by a contract creating a lien upon the property, although the effect may be to delay or even defeat other creditors in the collection of their demands.

4. **Consent Equivalent to Authority.**—One of two partners executed a deed of trust to secure debts of the firm; the other partner having consented thereto, signing the paper as witness, the instrument was binding upon both members of the firm.

5. **Mortgage of Firm Assets to Secure Individual Debts.**—A mortgage by one member of a firm, assented to by the other member, to secure the debts of the firm, does not become invalid because an individual debt of the maker was included in the debts secured.

6. **Same.**—That one item of indebtedness was improperly included among debts secured by a trust will not vitiate such instrument as against other bona fide accepting creditors.

APPEAL from Hamilton. Tried below before Hon. W. M. SLEEPER, Special District Judge.

*S. L. Samuels*, for appellants.—1. The deed of trust, though apparently a mortgage, was shown by evidence as to the facts and circumstances under which it was made, and as to the intention of the parties, to be a partial assignment made by insolvent debtors for the benefit of their creditors, and not a mortgage. Its status as a partial assignment was shown by the following facts:

(1) It was made not to secure the debts mentioned by it against default in their payment at maturity, but to raise a fund in the hands of the trustees to absolutely pay them, whether due or not.

(2) No equity of redemption was reserved or intended to be reserved, the evidence showing that the debtors did not intend to pay the debts or redeem the property, but to part with the dominion and title thereto, and assign the same absolutely; that they were insolvent and pressed by their creditors, and that the amount of the debts secured was vastly in excess of the property conveyed.

(3) No condition of defeasance was contained in the deed, and none could be implied, as most of the debts protected by it were past due, and the trustees were directed to proceed to sell at once and pay the debts.

(4) It was a partial and not a general assignment, because the evidence proved that the debtors had a large amount of other property besides that conveyed by the deed.

2. A conveyance of personal property by a debtor directly to a creditor, or a surety for the debtor, with power to sell the property, and out of the proceeds pay the debt, reserving the surplus to the debtor, is a mortgage. Waterman v. Silverberg, 67 Texas, 100; Bank v. Lovenberg, 63 Texas, 506; Jackson v. Harby, 65 Texas, 714; Stiles v. Hill, 62 Texas, 430; Weber v. Mack, 23 N. E. Rep., 650.

3. The reason of this is, that there is no trustee and no trust for third persons, which features are essential to an assignment for the benefit of creditors, and consequently the creditor simply takes a lien, and the title and ownership remain in the debtor. Jones Chat. Mort., sec. 352, p. 312; Burr. on Assign., sec. 3; Fechemier v. Robertson, 13 S. W. Rep., 424; Bonns v. Carter, 31 N. W. Rep., 386.

4. But where the creditor, or surety to whom the property is directly conveyed, is required by the instrument to pay the surplus to another creditor, or creditors, instead of returning it to the debtor, a trust as to such surplus is created for the other creditors, and the grantee becomes a trustee for them; and if, in addition, the instrument involves no condition of defeasance, express or implied, it is an assignment for creditors, and not a mortgage. Moody v. Paschal, 60 Texas, 483; Johnson v. Robinson, 68 Texas, 399; Burr. on Assign., 3 ed., sec. 3, p. 6; Stout v. Watson, 24 Pac. Rep., 231, 232.

5. A conveyance to a third party for the benefit of creditors, expressing a condition of defeasance, or stating that it is intended as security for a debt, or debts, or that it is intended as a mortgage, is on its face a mortgage. Scott v. McDaniel, 67 Texas, 317; Hudson v. Milling Co., 79 Texas, 401; Green v. Banks, 24 Texas, 516, 517.

6. But if it involves or contains no condition of defeasance, express or implied, and does not contain the above expressions, it is on its face an assignment for creditors. Boyd v. Haynie, 18 S. W. Rep., 156; Foreman v. Burnette, Id., 756.

7. The express reservation of a surplus after satisfaction of the debts is not a criterion to distinguish between a mortgage and an assignment. Such reservation is an incident to both classes of instruments, and depends upon the accidental contingency as to whether the proceeds of the property will exceed the debts which are to be satisfied. When not expressed, it is implied by law as to both classes of instruments. Burr. on Assign., secs. 2, 147, 206; Jones Chat. Mort., sec. 712; Stiles v. Hill, 62 Texas, 430; Laird v. Weis Bros., 85 Texas, 93.

8. A reservation of a surplus is not the same as a condition of defeasance or an equity of redemption. It may exist without the others. It does so exist in the case of an assignment for creditors, but does not in the case of a mortgage. Foreman v. Burnette, 18 S. W. Rep., 758; Burr. on Assign., secs. 2, 206; Jones Chat. Mort., secs. 17, 353.

9. Parol evidence is admissible to show the intention of the parties as to whether the instrument should be an assignment or a mortgage. In such cases the courts are not bound by the language of the instrument, but will construe and give effect to the same by converting the instrument into an assignment or mortgage, in the light of the circumstances under which it was made. Examples of similar constructions are those with reference to instruments claimed to be absolute deeds, absolute bills of sale, or mortgages, or conditional sales with right to repurchase, or mortgages. Whether an apparent mortgage is an assignment, or an apparent assignment is a mortgage, is a question to be determined not from the language of the instrument alone, but from such language in connection with all the facts and circumstances under which the instrument was made. Johnson v. Robinson, 68 Texas, 403; Hudson v. Milling Co., 79 Texas, 406, 407; Richmond v. Mississippi Mills, 11 S. W. Rep., 962; Hargadine v. Henderson, Id., 221; Bank v. Bank, 136 U. S., 229; Box v. Goodbar, 14 S. W. Rep., 925; Robson v. Tomlinson, 15 S. W. Rep., 456; Bank v. Crittenden, 66 Iowa, 237; 23 N. W. Rep., 646; Bank v. Lovenberg, 63 Texas, 506; Howerton v. Holt, 23 Texas, 59; Kohn v. Clement, 12 N. W. Rep., 550; Winner v. Hoyt, 28 N. W. Rep., 383.

10. An absolute indefeasible conveyance of property by a debtor to a trustee, with the power to convert the same, by sale, into money, and with the proceeds raise a fund to pay debts, is an assignment for the benefit of creditor. Bump Fraud. Con., 2 ed., pp. 321, 322; Burr. on Assign., 3 ed., p. 12; Richmond v. Mississippi Mills, 11 S. W. Rep., 962: Bartlett v. Teah, 1 Fed. Rep., 768; Briggs v. Davis, 21 N. Y., 577; Smith v. Beatie, 31 N. Y., 545.

11. A partial assignment by an insolvent debtor is void under the assignment act of Texas, irrespective of the fact as to whether it exacts releases or not. The first paragraph of the act, requiring a transfer of all of the property, refers to all assignments by insolvents, and says nothing of releases; and this requirement is not affected by the permission to exact releases granted by the third section, such privilege being optional with the assignor. The statute commands that such assignment by an insolvent debtor shall provide for a distribution of all of his property, other than that exempt, among all of his creditors, (section 1). It requires the debtor to annex a sworn inventory of all his property, and of all his creditors (section 2). It makes void all fraudulent transfers of property previous to and in contemplation of the assignment, and gives the assignee power to recover the same (sec-

tion 9). It provides for a compulsory examination of the assignor with a view to the discovery of property concealed or withheld (section 10). It makes such fraudulent concealment or transfer a felony (section 11).

These provisions requiring that the assignment shall be a general one, are mandatory, and prohibit by necessary implication the right to an insolvent debtor to make a partial assignment. Donoho v. Fish, 58 Texas, 166, 167; Coffin v. Douglas, 61 Texas, 407, 408; McFarland v. Bate, 10 L. R. Ann., 525; same case, 25 Pac. Rep., 240; 45 Kan., 1; Kennedy v. McKee, 142 U. S., 614; May v. Walker, 28 N. W. Rep., 252; Auley v. Osterman, 25 N..W. Rep., 659; Campbell v. Iron Co., 7 Pac. Rep., 294; Stout v. Watson, 24 Pac. Rep., 232.

*Wilkinson & Rice,* for Hamilton-Brown Shoe Company, appellant.

1. The instrument was an assignment, and not a mortgage, for the following reasons:

The firm of M. J. Hearne & Co., and the individual members thereof, were heavily indebted and insolvent. Howerton v. Holt, 23 Texas, 59; Johnson v. Robinson, 68 Texas, 401, 402.

Many of the preferred debts were past due. Box v. Goodbar, 14 S. W. Rep., 925.

The firm did not expect to resume business. White v. Cotzhausen, 129 U. S., 341–343.

The property was directed to be sold at once to pay the preferred indebtedness. Robson v. Tomlinson, 15 S. W. Rep., 446.

The privilege of paying the debts and redeeming the property was not reserved in the deed of trust. Bank v. Bank, 136 U. S., 235, 236; Richmond v. Mississippi Mills, 11 S. W. Rep., 962, 963.

The property conveyed was much less in value than the debts secured, so there could be no surplus and no inducement to redeem.

There was no intention to pay off the preferred indebtedness and redeem the property. Richmond v. Mississippi Mills, 11 S. W. Rep., 962, 963; Hargadine v. Henderson, 11 S. W. Rep., 221, 222.

The intention at the time of the execution of the instrument was that the property should pass absolutely for the purpose of raising a fund to pay debts. Foreman v. Burnette, 18 S. W. Rep., 756, 759.

2. The instrument, being an assignment, is void, because partial only, in that it purports to convey only the interest of S. R. Scogin in only a portion of said firm property, and does not provide for the transfer of the individual property of either of the members of said firm. Donoho v. Fish, 58 Texas, 166, 167; Coffin v. Douglas, 61 Texas, 407, 408; Still v. Focke and Williams, 66 Texas, 722, 723; McFarland v. Bate, 10 L. R. Ann., 525; Kennedy v. McKee, 142 U. S., 614; May v. Walker, 38 N. W. Rep., 252; Auley v. Osterman, 25 N. W. Rep., 659; Campbell v. Iron Co., 7 Pac. Rep., 294.

*Williams & Evans*, for Bradford-Boogher Hat Company, appellant.—
A deed of trust conveying partnership property which directs that the
surplus, if any, of the goods or proceeds thereof remaining after satis-
fying the secured debts shall be turned over to a third person, even
though a member of the partnership, is fraudulent upon its face, be-
cause thereby it hinders and delays other creditors, and the creditor
taking under such deed of trust is charged with notice of the fraud,
and became a participant therein; by reason of which the deed should
be held void, provided the firm and the individuals thereof were insol-
vent.   Means v. Dowd, 128 U. S., 273.

*Lindsey, Goodson & Thomas* and *J. A. Eidson*, for appellees, Geo. F.
Perry and Wm. Maxwell.—1. The deed of trust upon its face shows
that it was made as security for the debts mentioned therein, and con-
tains a provision reserving any surplus that may remain after the debts
mentioned are paid off, and therefore the court did not err in finding
for plaintiffs.   Hudson v. Milling Co., 79 Texas, 401; Stills v. Hill, 62
Texas, 429; Waterman v. Silberberg, 67 Texas, 100; Scott v. McDaniel,
67 Texas, 315; McClure v. Sheeks, 68 Texas, 433.

2. It does not render the instrument less a mortgage that the prop-
erty embraced in the instrument was of less value than the debts secured,
and that the mortgagor, knowing that and being insolvent, never ex-
pected to redeem the property.   He nevertheless would have the right
to pay the debt off and release the property.   Scott v. McDaniel, 67
Texas, 315; Hudson v. Milling Co., 79 Texas, 401; Bank v. Marshall,
1 Texas Civ. App., 704.

3. The court did not err in holding the instrument a mortgage, be-
cause there is no testimony in the record showing that the instrument
was intended by the parties thereto to be anything else than it upon
its face purports to be.

Insolvency does not take away the right to make a valid mortgage.
Hudson v. Milling Co., 79 Texas, 407; Scott v. McDaniel, 67 Texas, 316.

A mortgagor may mortgage all of his property and go out of busi-
ness, and the mortgage is valid.   Bank v. Marshall, 1 Texas Civ.
App., 704.

A mortgage is valid where it directs property to be sold at once to
pay the debts.   Hudson v. Milling Co., 79 Texas, 404.

A mortgage is valid if the property is of less value than the debt
secured.   Scott v. McDaniel, 67 Texas, 316; Hudson v. Milling Co., 79
Texas, 406.

The privilege of paying debts and redeeming property is implied.
Hudson v. Milling Co., 79 Texas, 406.

A recital, that it is "intended to furnish a fund out of which debts
may be paid," does not invalidate the mortgage.   Waterman v. Silber-
berg, 67 Texas, 105.

4. If the court was right in holding Spurlin a partner, the deed of trust passed the partnership title to the property, as one partner may execute a valid mortgage of partnership property to secure a partnership debt. He having authority to pass valid title to such property by a sale, may, as incident thereto, execute a transfer of it in any form or mode by which such title could in any case be legally transferred, and it is immaterial whether he sign the name of each copartner separately, or the firm name. Schneider & Davis v. Sansom, 62 Texas, 201; Hollis v. Francois, 5 Texas, 195; Cartwright v. Hollis, 5 Texas, 156; Angier v. Coward, 79 Texas, 554; Jones Chat. Mort., 46.

5. A mortgagee is entitled to the same protection as a purchaser under like circumstances, and fraud on the part of the mortgagor does not affect the mortgagee unless he was a party or privy to it. Iglehart v. Willis, 58 Texas, 306; Edwards v. Dickson, 66 Texas, 615; Mixon v. Symonds, 2 Texas Civ. App., 629; Kirby v. Moody, 84 Texas, 201; Wallis v. Adoue & Lobit, 76 Texas, 118; Jones Chat. Mort., 335; Rider et al. v. Hunt, 25 S. W. Rep., 314; Milling Co. v. Eaton et al., 25 S. W. Rep., 614; 25 S. W. Rep., 33.

KEY, ASSOCIATE JUSTICE.—Appellees brought this suit against appellant Byrd, the sureties on his official bond as sheriff of Hamilton County, J. Shapera & Co., and the sureties on an indemnity bond executed by them, to recover the value of certain goods and merchandise seized and levied upon by Byrd under a writ of attachment in favor of said Shapera & Co. against S. R. Scogin. Appellees claim title to the property under an alleged mortgage or trust deed executed by S. R. Scogin prior to the levy of the attachment.

Appellants charged, that the alleged mortgage was made in fraud of S. R. Scogin's creditors; that it was not a mortgage, but a partial assignment, and void; and that the parties to said instrument contemplated that the grantor should remain in possession and control of the property in violation of the statute regulating assignments.

A trial before the court without a jury resulted in a judgment for appellees.

The court below filed the following conclusions of fact:

1. That on and prior to the 16th day of October, 1891, the firm of M. J. Hearne & Co. were engaged in and carrying on a general merchandise business in the town of Hamilton, Hamilton County, Texas.

2. That said firm of M. J. Hearne & Co. was composed of S. R. Scogin and John L Spurlin, the said Spurlin having the sole and exclusive management and control of the same.

3. That on the 16th day of October, 1891, the said firm of J. M. Hearne & Co. and the individual members thereof were insolvent.

4. That on the said 16th day of October, 1891, the said S. R. Scogin executed a deed of trust in the nature of a mortgage to plaintiffs, George

F. Perry and William Maxwell, as trustees, conveying the property in controversy in this suit to them to secure John D. Rogers & Co., of Galveston, Texas, and other creditors of said firm of M. J. Hearne & & Co., therein mentioned, in the payment of certain debts described in said deed of trust owed by said M. J. Hearne & Co. to said John D. Rogers & Co., and said other creditors. Said deed of trust reciting, that said S. R. Scogin was doing business in Hamilton, Texas, under the name and style of M. J. Hearne & Co., and that she was the sole owner and constituent of said styled business, and that she executed said instrument for herself and for her said business operated under said business style; and reciting also, that the indebtedness listed therein and due by her, and that said accounts and notes were incurred by her and made by her in the style name of M. J. Hearne & Co., except the A. H. Watson note, which is in the name of S. R. Scogin, and reciting that said deed of trust is executed for the purpose of assuring, securing, and paying of said indebtedness described therein. The trustees are authorized to take immediate possession of the property and sell the same for cash, and pay off said indebtedness in the order provided therein, as fast as sales can be made, from the proceeds of said sales; and it is further provided, that said instrument is intended as a mortgage to secure the payment of the claims and debts as therein named in the order and manner as named, and to indemnify said above named creditors, and for the purpose as a mortgage to as fully protect, secure, and indemnify each and every one of the sureties therein named on each and every note therein set out, and save them entirely harmless against loss or damage on account of their liability thereon, as the same is made to the payee of each and every one note, and is fully intended as such mortgage to assure, secure, provide, and furnish a fund for the benefit of all said sureties out of which debts may be paid, and shall in all respects for said purposes inure to their benefit as before stated, without reference to the acceptance of said instrument as security by any payee of any of said notes. And lastly, it is provided that when a sufficient quantity of said goods and property to pay off and fully discharge the debts therein secured, and also the expenses of executing the mortgage, the remainder shall be the property of said S. R. Scogin, and shall be returned to her. The said instrument was signed by John L. Spurlin and C. E. Horton, as witnesses. Besides the property conveyed, the firm owned at the time a large amount of property in cotton, sheep, and lands. And S. R. Scogin owned considerable in money, and J. L. Spurlin $1000 in bank stock.

5. That on the day before the execution of said deed of trust by said S. R. Scogin, the said trustees therein, George F. Perry and William Maxwell, were requested by the attorney of Mrs. S. R. Scogin, who prepared the same, to act as such trustees in said instrument, and agreed to do so; that said deed of trust was prepared and submitted to

said trustees on the afternoon of October 16, 1891, and that it was signed by said Mrs. S. R. Scogin in the afternoon of said day and delivered to her attorney, G. H. Goodson, who filed same for registration at eight minutes after 4 o'clock in the afternoon of October 16, 1891, in the office of the clerk of the County Court of Hamilton County, and that said G. H. Goodson, shortly after said instrument was so filed, notified said trustees, George F. Perry and William Maxwell, and that said trustees immediately thereafter took possession of the property described in said deed of trust and conveyed thereby, and that said possession was so taken about sundown on said day. And that between the time of filing said deed of trust and the taking possession by the trustees, said S. R. Scogin and J. L. Spurlin remained in complete possession and control of the business and goods of M. J. Hearne & Co. conveyed by the deed of trust, and sold some of said goods in course of business, and collected the proceeds of said sale, and did not deliver the same to the trustees, but converted them to their own use.

6. That the said above described deed of trust was executed by said S. R. Scogin in fraud of her creditors. But neither the accepting creditors provided for therein nor said trustees had notice thereof, and did not participate in the same.

7. That the debts secured by said deed of trust and described therein are and were all actual, valid, and bona fide debts of the said S. R. Scogin and the said firm of M. J. Hearne & Co., except the said debt of A. H. Watson, which was due by said S. R. Scogin alone.

8. That all the creditors mentioned in said deed of trust accepted the same before the levy of the writ of attachment under which the goods described in plaintiffs' petition were seized by defendant W. R. Byrd, sheriff, under writ of attachment.

9. That when S. R. Scogin executed said deed of trust, she, J. L. Spurlin, and the firm of M. J. Hearne & Co. were insolvent, and neither she nor said Spurlin hoped, expected, or intended to redeem said goods and property conveyed by said deed of trust.

10. I find that the defendant, W. R. Byrd, as sheriff of Hamilton County, acting under a writ of attachment issued out of the District Court of Hamilton County against S. R. Scogin in favor of the defendants J. Shapera & Co., did, at the request and instance of said defendants J. Shapera & Co., seize and convert said goods, taking the same out of plaintiffs' possession without their consent, on the 18th day of October, 1891, and that the said goods were of value of $1030 in Hamilton, Texas, the place where they were so seized, at the date of said seizure.

11. I find that the official bondsmen of said sheriff, on the date of said seizure, were A. L. Phillips, R. Y. Cox, T. J. Hubbert, and Joel Fisher, and that said defendants J. Shapera & Co., before the levy of

said writ of attachment, executed to said sheriff, W. R. Byrd, on indemnifying bond, with sureties as set out in plaintiffs' petition.

We do not find in the statement of facts any evidence supporting that part of the foregoing findings which states that one of the debts secured by the conveyance executed by Mrs. S. R. Scogin, October 16, 1891, was her individual debt, and not a partnership liability. Said conveyance is not copied in either the court's finding or the statement of facts, and the statement of the findings, that one of the debts secured was Mrs. Scogin's individual note to A. H. Watson, does not correspond with the recitals of the substance of said conveyance embraced in the statement of facts. With this qualification, the foregoing findings are supported by the evidence and adopted by this court.

The testimony shows the following, which we add as supplemental findings of fact:

1. J. L. Spurlin, found by the court to be a member of the firm of M. J. Hearne & Co., procured, advised, and consented to the execution of the trust conveyance executed by Mrs. S. R. Scogin, October 16, 1891.

2. Said conveyance is described in the statement of facts as follows: It recites that S. R. Scogin, doing business under the name and style of M. J. Hearne & Co., and being sole owner and constituent of said business, and executing said instrument for herself and her said business, in consideration of $10, conveys to Geo. F. Perry and William Maxwell, all her stock of general merchandise, consisting of dry goods, groceries, hardware, farming implements, agricultural machinery, barbed fencing wire, wagons, etc., owned and controlled by her under said style name, and situated in the two adjoining and consolidated storehouses in which said business is conducted, in Hamilton, Texas, fully describing the conveyed property; also certain notes and accounts owing to her arising out of said business, described in two schedules attached. It states, that whereas S. R. Scogin is indebted on matters arising out of said business to John D. Rogers & Co. in the sum of $10,737.60, and to other parties, fully specifying them and their debts, in the sum of about $17,000, for some of which other parties are sureties, evidenced part by notes, part on open account, of which amount about $11,000 was past due, and about $16,830 was to become due, and desiring, for the purpose of assuring, securing, and paying the above described notes and evidences of indebtedness to the above named creditors, first to pay off John D. Rogers & Co., and second, the remaining creditors pro rata, until all are fully paid, it authorizes the trustees to take immediate possession of the property, and the same is delivered contemporaneously with the delivery of the instrument, and to at once collect the accounts and sell all the property for cash, and out of the proceeds of collections and sales to pay all the debts in the order above named, and said debts shall be paid off as fast as sales can be

made and funds can be obtained from sales of said goods and from the collection of said debts due her. The trustees are to pay all necessary expenses incurred by them, not to exceed $300 per month, and may sell the goods in bulk or in parcel, or partly in both ways, as to them may seem best, providing for ten days' advertisement in case of sales in bulk, and the goods shall be sold and the accounts collected, or, if not collected, sold for cash within ninety days. It further recites, this conveyance and the delivery of said property and indebtedness due me as herein set forth and enumerated is intended as a mortgage to secure the payment of the claims and debts as herein named in the order and manner as named; and to indemnify our said creditors as named; and it is also expressly for the purpose as a mortgage to as fully protect, secure, and indemnify each and every one of the sureties herein before named on each and every note as herein before set out, and save them entirely harmless against loss or damage on account of their liability thereon, as the same is made to the payee of each and every one of said notes, and is fully intended as such mortgage to assure, secure, provide, and furnish a fund for the benefit of all said sureties, out of which debts may be paid, and shall in all respects for said purpose inure to their benefit as before stated, without reference to the acceptance of this instrument as security by any payee of any of said notes, and after the debts and expenses are paid, then the remainder of the goods and accounts or the proceeds thereof shall be her property and be returned to her. [Signed] S. R. Scogin, M. J. Hearne & Co., and witnessed by C. E. Horton and J. L. Spurlin.

3. The property conveyed was not equal in value to the debts it was intended to pay or secure; at least, as against appellants, we so consider the case, as they have stated such to be the fact in their brief.

4. Of the property not covered by the trust deed in question, it was shown that the land was mortgaged; the sheep had been shipped to Chicago for sale; and Spurlin was making arrangements to, and did, sell the cotton in fraud of creditors. The mortgage in question covered substantially all the unincumbered assets of the firm and both partners, except some notes and accounts and bank stock worth $6000 or $7000.

*Opinion.*—1. It is contended by appellants, that the conveyance from S. R. Scogin to appellees, and under which the latter claim title to the property involved, is not a mortgage, but a partial assignment made by an insolvent debtor; and that, inasmuch as it does not convey all the debtor's property, it is void.

Inasmuch as said instrument recites on its face that it is intended as a mortgage to secure certain debts, and as it reserves to the grantor whatever surplus may remain after said debts are paid, and as it does not convey all the grantor's property, a majority of the court holds

that it is a trust deed in the nature of a mortgage, and not an assignment for the benefit of creditors; and in support of this ruling they cite the following authorities: Stiles v. Hill, 62 Texas, 429; Watterman v. Silberberg, 67 Texas, 100; Hudson v. Milling Co., 79 Texas, 401; Laird v. Weiss, 85 Texas, 93.

In view of all the terms of the instrument, the circumstances under which it was executed, as shown in the statement of facts, the recitals therein, that it is intended for the purpose of paying as well as securing the debts referred to, and the further recital, that it is intended to provide and furnish a fund with which to pay said debts; and of the testimony of Mrs. S. R. Scogin, the grantor, that the goods were transferred as a fund for the purpose of paying the debts, and that her intention was that the property should pass absolutely for the payment of the debts mentioned in the instrument, the writer doubts the correctness of the construction placed upon said conveyance by the majority of the court; and he cites the following authorities: 1 Am. and Eng. Encyc. of Law, 845; White v. Cotzhausen, 129 U. S., 329; Burrows v. Lehndorff, 8 Iowa, 96; Richmond v. Mississippi Mills, 11 S. W. Rep., 960; The State v. Dupy, 11 S. W. Rep., 964; Box v. Goodbar, 14 S. W. Rep., 925; Robinson v. Tomlinson, 15 S. W. Rep., 456; Penzel v. Jett, 26 S. W. Rep., 120; Foreman v. Burnette, 83 Texas, 396.

But even if said instrument should be construed as an assignment by an insolvent debtor for the benefit of creditors, in so far as the writer has been able to find, it is not conclusively settled by our Supreme Court that it would be void.

It is true that it does not purport to, and in fact does not, convey all the debtor's property; and such assignments, with clauses exacting releases for any unsatisfied balances from accepting creditors, have repeatedly been declared void. Donoho v. Fish, 58 Texas, 164; Coffin v. Douglass, 61 Texas, 406; Still v. Focke, 66 Texas, 717; Shoe Co. v. Ferrell, 68 Texas, 638; Baylor County v. Craig, 69 Texas, 330; Turner v. Douglass, 77 Texas, 619.

But in the conveyance under consideration there is no clause exacting releases from accepting creditors; and it may be that this difference calls for a distinction as to the validity of the two classes of instruments. That the law ought not to allow an insolvent debtor to exact a discharge of the unpaid residue of his debt, when he has not surrendered all of his property subject to execution, is apparent. But it is well settled in this State that an assignment made by an insolvent debtor for the benefit of creditors, even though it may attempt to create preferences and to entirely exclude some creditors, will, by force of the statute and contrary to the assignor's purpose, inure alike to the benefit of all. Fant v. Elsbury, 68 Texas, 1.

Therefore, as all creditors can equally participate in the benefits of a partial assignment, when such an instrument does not exact releases

from accepting creditors, the same reasons do not exist for declaring it void.

These are the individual suggestions of the writer, for which the other members of the court are in nowise responsible; and it must be conceded that expressions in Donoho v. Fish, 58 Texas, 164, indicate a disposition to hold, that every assignment by an insolvent debtor which does not attempt to convey all the assignor's property is violative of the statute and void.

2. The evidence does not show, as contended by appellants, that at the time the mortgage was executed it was contemplated by the parties that the mortgagors should remain in possession and control and dispose of the property. The fact that Spurlin remained in possession of the store and sold goods in the usual course of trade for a short while after the delivery of the mortgage, and did not account to the trustees for the proceeds of such sales, it not appearing that he knew the exact time when the mortgage was delivered, nor that the trustees authorized him to sell the goods as he did, does not show that, at the time the mortgage was executed, it was contemplated that Spurlin should remain in possession and control and dispose of the property.

3. The court found that the mortgage was executed by Mrs. Scogin with intent to defraud her creditors; but that neither the beneficiaries nor the trustees participated in the fraud or had notice of it. On these facts appellants submit the following proposition:

"A chattel mortgage given as mere security for antecedent debts is void if made by the mortgagor with intent to defraud his creditors without reference to the bona fides of the trustee or beneficiaries. It is different in this respect from a sale made in discharge of debts where the creditors cancel their indebtedness in consideration of the sale."

To this doctrine we can not assent. A creditor who in good faith, and for the sole purpose of protecting himself, purchases property from a failing or insolvent debtor, and takes no more than is reasonably sufficient to pay his claim, will be protected, although he may have notice that it is the purpose of the debtor in making the sale to defraud other creditors. Allen v. Carpenter, 66 Texas, 138; Edwards v. Dickson, 66 Texas, 613, and cases there cited.

A mortgage or deed of trust is a contract between the debtor and the creditor, and it is not binding upon any one until accepted by the beneficiary; and if a creditor, while acting in good faith, can protect himself by a contract which results in a purchase, we see no reason why, when actuated by a similar motive, and especially when the mortgaged property is of less value than the secured debt, he can not protect himself by a contract creating a lien, although the effect in each instance may be to delay, or even defeat, other creditors in the collection of their demands.

But in the present case the court found, that neither the secured creditors nor the trustees had notice of the fraud; and we are satisfied that the fraudulent purpose of the grantor will not defeat the instrument. Shoe Co. v. Mars, 82 Texas, 493; Kirby v. Moody, 84 Texas, 201; Bank v. Marshall, 1 Texas Civ. App., 704.

4. Even if Mrs. Scogin, the signing partner, did not have authority to mortgage the firm property to secure copartnership indebtedness, J. L. Spurlin, the other partner, having consented to, and in fact procured the execution of the mortgage, it is binding upon him. Having procured its execution by the other partner, for the purpose of conveying partnership property, it is binding as an act of the firm.

5. In a brief filed in this record in behalf of the Bradford-Boogher Hat Company, who claim to be interested in the result of this suit, it is urged that the mortgage is fraudulent upon its face, and therefore all persons were charged with notice of the fraud. This proposition appears to be founded upon the assumption that the mortgage shows on its face that one of the secured debts is an individual liability of Mrs. S. R. Scogin, one of the partners. Upon this assumption of fact, it is argued that a mortgage upon partnership assets to secure an individual liability of one of the partners is fraudulent as to the creditors of the partnership, and that, if the mortgage in question is fraudulent as to one of the debts attempted to be secured, it is not only void and inoperative as to such debt, but also as to all others.

It is true that the court found that one of the secured debts—the amount of which is not shown—was Mrs. Scogin's individual liability, but the statement of facts does not sustain this finding; and, although appellees did not except to this finding, it is not binding upon them, and they are entitled to have the correctness of the judgment determined by an application of the law to the facts as disclosed by the statement of facts. Tudor v. Hodges, 71 Texas, 392.

Besides, the mortgage not being fraudulent as to the other member of the firm, but having in fact been advised and consented to by him, under the case of Wiggins v. Blackshear, recently decided by our Supreme Court, even if it secured an individual debt of Mrs. Scogin, that fact would not render it fraudulent as to partnership creditors, although all the property mortgaged was partnership assets.

But even if one of the debts was such as could not be secured, over the objection of partnership creditors, by mortgage upon partnership assets, we are not prepared to hold that the attempt to secure it by the mortgage in question would vitiate the entire instrument.

Such appears to have been the ruling by the Court of Civil Appeals for the First District in Simon v. Ash, 1 Texas Civil Appeals, 202. The contrary, and in our opinion the better, rule has recently been announced by the Courts of Civil Appeals for the Fourth and

Fifth Districts.  Rider v. Hunt, 25 S. W. Rep., 314; Kraus v. Haas, 25 S. W. Rep., 1025.

After carefully considering all the questions presented by appellants' brief, this court has reached the conclusion that no grounds for reversal have been pointed out; therefore the judgment appealed from will be affirmed.

*Affirmed.*

Delivered May 23, 1894.